UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

RICHARD H. BERNSTEIN,

                                                      13 Civ. 04610 (CMM) (SN)

                              Plaintiff,

          -against-

CITY OF NEW YORK, NEW YORK and NEW
YORK CITY DEPARTMENT OF
TRANSPORTATION,

                            Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

        Defendants submit this memorandum of law in reply to "Plaintiff's Memorandum of Law in Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint," dated September 29, 2014 (Dkt. No. 57, "Pl's Opp. Memo"), and in further support of Defendants' Motion for Dismissal of the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dated August 26, 2014 (Dkt. No. 54, Defendants' Notice of Motion).

        For the reasons set forth below, Defendants are entitled to an order granting their motion. This is so because even assuming *arguendo* that the facts alleged in the First Amended Complaint are true and drawing all reasonable inferences in favor of Plaintiff and against the City, Plaintiff's claim is defective. Plaintiff does not allege that his access to Central Park is out of compliance with the Program Accessibility standard applicable to ADA claims against state

and local government. *See* 28 C.F.R. § 35.150(a)(1).  As the amended pleading fails to assert that Central Park is not "readily accessible" to Plaintiff on account of his disability, when the entrances to the Park are "viewed in their entirety," or when the paths within the Park are viewed in their entirety, Plaintiff fails to state a cognizable claim under Title II of the ADA.

### I. Pl's Opp. Memo Fails to Apply the Proper Standard for Determining Whether a Complaint Has Alleged Sufficient Factual Matter to State a Plausible Claim under Title II of the ADA

The last sentence of Point A of Pl's Opp. Memo sets forth the ground upon which Plaintiff relies in opposing Defendants' motion for failure to state a cognizable claim: "Plaintiff has demonstrated through specific examples in his First Amended Complaint that Defendants have violated several ADA guidelines."  *See* Pl's Opp. Memo at 7.

Pl's Opp. Memo fails to recognize that the Program Accessibility standard does not necessarily require the City to make every portion of Central Park accessible to and useable by individuals with disabilities. *See Pascuiti v. New York Yankees*, 87 F.Supp.2d 221, 223 (S.D.N.Y. 1999).[1][2][3]

---

[1] Moreover, Plaintiff's attempt to allege that the entrances to the Park violate his rights under the ADA while at the same time omitting from the First Amended Complaint the facts concerning Plaintiff's actual use of the Park's entrances plainly violates Rule 8 of the Fed. R. of Civ. P.

[2] Parenthetically, Pl's Opp. Memo does not expressly reject the charge in Defendants' Memorandum of Law in Support of Their Motion (Dkt. No. 56, "Defts' Memo in Support") that Plaintiff did not personally accompany his so-called ADA expert, Mr. Talbot, on December 14, 2013, when Mr. Talbot visited the Park. *See* Defts' Memo in Support at 17-18. Instead, Plaintiff provides an equivocal response, alleging that FAC ¶ 13 states that "[Plaintiff] has personally encountered the ADA violations alleged in Paragraph 20 of his First Amended Complaint … and [the FAC lists] numerous concrete violations of the ADA documented by his expert witness." This appears to mean that Plaintiff did not accompany Mr. Talbot on December 14, 2013, but merely that Plaintiff reviewed the Talbot PowerPoint Doc (Dkt. No. 49-1), and Plaintiff has seen violations of the same type as those described in the Talbot PowerPoint Doc.

[3] The inadequacy of Plaintiff's attempt to satisfy the Program Accessibility standard by relying on alleged violations encountered by his expert is illustrated when one considers the issue of Plaintiff's use of the entrances to Central Park. For example, if it is Plaintiff's practice to enter Central Park via one of the entrances near 59th Street and Fifth Avenue, and Plaintiff has never attempted to enter the Park by way of the sections of the Transverse depicted in the Talbot PowerPoint Doc (Dkt. No. 49-1 at 3-10), then the

While a complaint alleging specific examples of alleged ADA violations existing at a "place of public accommodation" operated by a private entity may defeat a motion to dismiss a claim under Title III of the ADA, such is not the case for claims against state and local government entities, which fall under Title II of the ADA.[4][5]

As discussed in Defts' Memo in Support at 11-13, the ADA standard applied to state and local government entities is whether the particular "service, activity or program" at issue, when "viewed in its entirety," is "readily accessible to and usable by individuals with disabilities." *See* 28 C.F.R. § 35.150. This standard is known as "Program Accessibility."

The difference between claims under Title II and Title III is discussed in the Americans with Disabilities, ADA Title II Technical Assistance Manual (the "Title II TA Manual"), prepared by the Department of Justice, which provides, in part, as follows:

> *How is "program accessibility" under title II different than "readily achievable barrier removal" under title III?* Unlike private entities under title III, public entities are not required to remove barriers from each facility, even if removal is readily achievable. A public entity must make its "programs" accessible. Physical changes to a building are required only when there is no other feasible way to make the program accessible.

---

alleged violative conditions depicted in the Talbot PowerPoint Doc are not relevant in determining whether the entrances to Central Park, when viewed in their entirety, are readily accessible to Plaintiff.

[4] A "place of public accommodation" is a "facility operated by a private entity whose operations affect commerce." 28 C.F.R. § 36.104.

[5] Private places of public accommodation are subject to the "Readily Achievable Barrier Removal" standard. Section III-4.4200 of the Americans with Disabilities Act, ADA Title III Technical Assistance Manual (the "ADA Title III TA Manual), which is entitled, **"**Readily achievable barrier removal," provides as follows: **"**Public accommodations are required to remove barriers only when it is 'readily achievable' to do so. 'Readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense." *See also* 28 C.F.R. § 36.304.
The Title III TA Manual is available at:   http://www.ada.gov/taman3.html

> In contrast, barriers must be removed from places of public accommodation under title III where such removal is "readily achievable," without regard to whether the public accommodation's services can be made accessible through other methods.

See Title II TA Manual, at II-5.2000.[6]

Based on the Program Accessibility standard, Plaintiff's claim that "he has personally encountered the ADA violations alleged in Paragraph 20 of his First Amended Complaint … [and Paragraph 20 contains] … numerous concrete violations of the ADA documented by [Plaintiff's] expert witness" fails to state a claim under Title II of the ADA. *See* Pl's Opp. Memo at 8.

The sparse facts set forth in the First Amended Complaint appear to challenge Plaintiff's accessibility of: (1) the entrances to Central Park, and (2) either East Drive or all paths within Central Park. This conclusion is based on paragraph 12 of the FAC, which provides that "Plaintiff … cannot safely enter Central Park due to several ADA violations," and the fact that the only specific factual allegation in the amended pleading describing Plaintiff's use of Central Park is the occasion of August 13, 2012, and, according to the superseded pleading, Plaintiff was walking along East Drive on that date.[7]

Based on the foregoing, even assuming *arguendo* that the alleged conditions listed at subparagraphs 3(m) through 3(u) actually constitute violations of the Title II regulations, Plaintiff nevertheless fails to state a cognizable claim because he does not allege that the

---

[6] The Title II Technical Assistance Manual is available at: available at: http://www.ada.gov/taman2.html

[7] Paragraph 15 in the superseded pleading (Dkt No. 1) states that the path on which Plaintiff was strolling at the time he was injured was East Drive. *See U.S. v. McKeon*, 738 F.2d 26, 31 (2nd Cir. 1984) (noting that the law is clear that superseded pleadings in civil litigation constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party).

- 5 -

entrances to Central Park and the paths within the Park, when viewed in their entirety, are not readily accessible to Plaintiff on account of his disability.

The fact that the City is not required to make every entrance to and every path within Central Park accessible to Plaintiff is supported by "Illustration 3" of Section II-5.1000 of the Title II TA Manual. "Illustration 3" provides as follows: "A State provides ten rest areas approximately 50 miles apart along an interstate highway. Program accessibility requires that an accessible toilet room for each sex with at least one accessible stall, or a unisex bathroom, be provided at each rest area." *See* Section II-5.1000 of the Title II TA Manual. Just as each rest area in Illustration 3 may have more than one toilet but only one need be an accessible stall, the Program Accessibility standard does not require the City to make accessible each one of "the more than fifty entrances distributed around the Park's six-mile perimeter." *See* CENTRAL PARK CONSERVANCY, REPORT ON THE PUBLIC USE OF CENTRAL PARK, APRIL 2011, at 1.[8] Similarly, the City is not required to make accessible all "70 miles of walks, drives, and bridle paths that comprise the Park's circulation system." *Id.*

Page 6 of Pl's Opp. Memo pays lip service to Title II's Program Accessibility standard, admitting that "Title II requires that public entities provide disabled individuals with equal opportunities to participate in programs, when said programs are viewed in their entirety." *See* Pl's Opp. Memo at 6. However, Plaintiff does not analyze the facts alleged in the amended pleading under the Program Accessibility standard. Indeed, Plaintiff fails even to make the conclusory allegation that Central Park, when viewed in its entirety, is not readily accessible to Plaintiff.

---

[8]This publication is available at:
 http://www.centralparknyc.org/assets/pdfs/surveyreport_april2011.pdf

As Plaintiff fails to specifically allege that the entrances to and paths within Central Park are not readily accessible to him, based on his disability, when the entrances and paths are viewed in their entirety, Plaintiff fails to state a cognizable claim under Title II of the ADA.

### II. **Pl's Opp. Memo Mischaracterized Defendants' Reliance on *Chapman v. Pier 1 Imports***

There is no factual or legal basis for Plaintiff's contention that Defendants' "position [on the Program Accessibility standard] is expressly rejected by a Ninth Circuit opinion upon which Defendants *rely* in their Motion for Dismissal (emphasis in original)." Pl's Opp. Memo at 7. Setting aside the fact that Plaintiff fails to provide any explanation whatsoever for this claim, Plaintiff's statement is surprising for several additional reasons.

First, the Ninth Circuit opinion referenced by Plaintiff, *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945-46 (9th Cir. 2011), contains no discussion whatsoever of the Program Accessibility standard. This is because *Chapman* examines a claim under Title III of the ADA, concerning a private place of public accommodation, and therefore, the Program Accessibility standard is not applicable. Moreover, footnote 8 of Defts' Memo in Support specifically noted that the *Chapman* decision concerns a Title III claim, and therefore, the "full and equal" standard discussed therein is not applicable to Plaintiff's claim.

Furthermore, Plaintiff's reference to Defendants' reliance upon *Chapman* in the context of a discussion of the Program Accessibility standard, is wholly misleading. Defendants cited *Chapman* in support of Defendants' claim that Plaintiff lacks *standing* to assert claims as to alleged ADA violations he did not personally encounter. *See* Point III of Defts' Memo in Support at 17-20. Defendants' discussion of the Program Accessibility standard was provided in an earlier section, at Point I.B.2 and Point II.B. *See* Defts' Memo in Support at 11-13, and 17.

Based on the foregoing, there is no basis for Plaintiff's challenge of Defendants' application of the Program Accessibility standard to the facts in the First Amended Complaint.

### III. Plaintiff Never Requested a "Reasonable Modification"

Plaintiff's extended discussion of the notion of "reasonable modification" and the Second Circuit's opinion in *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2nd Cir. 2003) is surprising, as Plaintiff has never alleged that he asked the City for a reasonable modification of a particular entrance to Central Park or regarding a particular path.  *See* Pl's Opp. Memo at 5-6; *see also* 35 C.F.R. § 35.130(b)(7).

Nor has Plaintiff ever alleged that he requested installation of an accessible pedestrian signal ("APS") at a particular location in Central Park, pursuant to the City's Accessible Pedestrian Signals Program. *See* New York City Administrative Code ("Admin. Code") §§ 19-101.4 and 19-188.[9]  Parenthetically, Plaintiff fails to cite the Title II regulations requiring the City to "promulgate or enforce proper traffic rules, and … install adequate [*sic*] pedestrian signals." *See* Pl's Opp. Memo at 3; FAC ¶ 3(r).

---

[9] Section 19-188 of the Admin. Code provides, in part, as follows:
   a. The department shall establish an accessible pedestrian signals program. As part of this program, the department shall identify intersections where accessible pedestrian signals may be installed based on guidelines, including, but not limited to, those set forth in the most recent version of the manual on uniform traffic control devices. The department, after consultation with the mayor's office for people with disabilities and with advocates for and members of the visually impaired community, shall identify intersections which reflect the greatest crossing difficulty for persons with visual impairments. Commencing in 2012, the department shall annually install, based on such guidelines, an accessible pedestrian signal at each corner of twenty-five intersections identified by the department following such consultation.

### IV. The First Amended Complaint Fails to Cite the Title II Regulations Allegedly Violated by the Conditions Alleged in Sub-Paragraphs 3(l) through 3(u) and Paragraph 20

The First Amended Complaint fails to cite the regulations upon which Plaintiff relies in alleging that the conditions described at FAC ¶¶ 3(l)-3(u) and 20, and depicted in the photographs of the Talbot PowerPoint Doc (Dkt. No. 49-1) actually violate the regulations promulgated under Title II of the ADA.[10]

In response to this claim, Plaintiff asserts that "Plaintiff indeed cited the Title II regulations violated by Defendants in Paragraph 3 of his First Amended Complaint." Pl's Opp. Memo at 9. However, a close review of FAC ¶ 3 indicates this is incorrect. Paragraph 3 of the amended pleading contains twenty-three subparagraphs. The alleged violative conditions are listed in the ten subparagraphs provided at subparagraph 3 (l) ["Failing to promulgate and/or enforce adequate bicycle safety rules in Central Park] through subparagraph 3(u) ["Vertical elevation changes at curb line in excess of the maximum allowable under the ADA."]. No regulations are cited in paragraph 3 of the FAC to support that each of the alleged conditions in subparagraphs 3(l) through 3(u) violates the regulations of Title II of the ADA.

To the extent Plaintiff's claim is based on the regulations cited in subparagraph 3(a) through subparagraph 3(k), the provisions cited therein are either general in nature or unrelated to the facts alleged in subparagraphs 3(l) though 3(u) of the amended pleading. For example, subparagraph 3(i) alleges that the City "[failed] to ensure that communications with disabled individuals are as effective as communications with others in violation of 28 C.F.R.

---

[10] Plaintiff's expert does not allege the particular sections of the Uniform Federal Accessibility Standards ("UFAS"), the 1991 Standards for Accessible Design ("1991 Standards"), or the 2010 Standards for Accessible Design ("2010 Standards") upon which he relies in finding each of the described conditions to be violations of the ADA.

35.160," however, the First Amended Complaint contains no factual allegations to support that such a violation exists in Central Park. Similarly, the amended complaint contains no factual allegations to support that there are conditions in Central Park violating the regulations cited at subparagraph 3(f), 3(g), 3(j) and 3(k) of the First Amended Complaint.

## CONCLUSION

**FOR THE FOREGOING REASONS, THE COURT SHOULD GRANT DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND DISMISS THIS ACTION IN ITS ENTIRETY**

Dated:  New York, New York
October 14, 2014

Respectfully submitted,

ZACHARY W. CARTER
Corporation Counsel of the
   City of New York
*Attorney for Defendants*

By: /s/

Mary O'Sullivan (MO 8495)
Assistant Corporation Counsel
New York City Law Department
100 Church Street, Room 5-174
New York, New York 10007
Tel: (212) 356-2206
mosulliv@law.nyc.gov