**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

RICHARD HOWARD BERNSTEIN,

                              Plaintiff,

              -against-

CITY OF NEW YORK, et al.,

                              Defendants.
-------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:__   1/7/2015
```

**13-CV-04610 (CM)(SN)**

**REPORT AND**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE COLLEEN McMAHON:**

Plaintiff Richard H. Bernstein brings this action pursuant to Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* ("Rehabilitation Act"), against the City of New York (the "City") and the New York City Department of Transportation ("DOT") (collectively, the "City"). Bernstein alleges that he is blind and visits New York's Central Park (the "Park") from his home in Michigan, and that the Park is not readily accessible to the disabled because of problems related to, among other things, the placement of park signs, the width of sidewalks, the slopes of sidewalks and ramps, divots and holes in the sidewalk, and missing handrails. Bernstein seeks declaratory and injunctive relief.

The City filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and for lack of standing. Because I find that Bernstein lacks standing, I recommend that the City's motion to dismiss be GRANTED.

## BACKGROUND

### I.     Procedural Background

On September 13, 2012, Bernstein filed a complaint against the City in the United States District Court for the Eastern District of Michigan. On June 28, 2013, the Eastern District of Michigan granted the City's motion to transfer the matter to the Southern District of New York.

On July 24, 2013, the City answered the complaint. Then, on February 1, 2014, the City filed a motion for judgment on the pleadings. On February 28, 2014, Bernstein opposed the motion and sought leave to file an amended complaint. On March 11, 2014, the City filed a reply in support of its motion for judgment on the pleadings and in opposition to Bernstein's motion for leave to file an amended complaint. On June 24, 2014, the Court granted Bernstein's motion for leave to amend and denied as moot the City's motion for judgment on the pleadings. In its June 24, 2014 Order, the Court instructed Bernstein that his amended pleading should address deficiencies raised by defendant's motion for judgment on the pleadings, and that no further opportunities to amend the complaint would be allowed should the City file a motion to dismiss.

On July 9, 2014, Bernstein filed an amended complaint, and on August 27, 2014, the City moved to dismiss it. On September 29, 2014, Bernstein filed an opposition, and on October 14, 2014, the City filed its reply.

### II.    Factual Background

The following facts are taken from Bernstein's pleadings and assumed true for the purposes of this motion. Conclusory allegations, however, are "not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009).

## A.      The Parties

The plaintiff Richard Bernstein is blind and lives in Birmingham, Michigan. (FAC ¶ 7.)
He is physically disabled under the ADA. (Id. at ¶ 9.) He has visited New York "approximately
30 times per year, for over 10 years." (Id. at ¶ 12.) During those trips, he visited Central Park
"hundreds of times," but required the assistance of strangers due to accessibility problems he
encountered. (Id. at ¶ 13.) On August 13, 2012, he was struck by a bicyclist while attempting to
walk on a pedestrian path in the Park. (Id. at ¶ 15.)

The defendant City of New York, through the New York City Department of Parks and
Recreation, contracts with the Central Park Conservancy, a private, nonprofit organization, to
manage Central Park.[1] The City is a public entity subject to Title II of the ADA. (FAC ¶ 25.) It is
also subject to the Rehabilitation Act because it receives funding from the federal government.
(Id. at ¶ 36.) The defendant New York City Department of Transportation is responsible for the
day-to-day maintenance of the city's streets, highways, bridges sidewalks, street signs, traffic
signals, and street lights.[2]

## B.      Central Park

Central Park is a public park on 843 acres in Manhattan. (FAC ¶ 11.) It has
approximately 40 million visitors a year. See note 1. The Park has three north-south roadways
and four transverse roadways, which run east-west. These roads are multi-use roadways open to
pedestrians, bikers, and cars.[3]

---

[1] See *About Us*, CENTRAL PARK CONSERVANCY, http://www.centralparknyc.org/about/about-cpc (last visited Dec. 30, 2014).

[2] See *Infrastructure of New York City DOT*, NEW YORK CITY DEP'T OF TRANSP., http://www.nyc.gov/html/dot/html/infrastructure/infrastructure.shtml (last visited Dec. 30, 2014).

[3] See http://en.wikipedia.org/wiki/Central_Park (last visited Jan. 6, 2015).

3

### C.    Bernstein's Amended Complaint

In his amended complaint, Bernstein states that he has been blind since birth but has experience getting around without assistance. (FAC ¶ 14.) He navigates airports on his own when in New York and also walks across town from his hotel to the Park without assistance. (Id.) During his hundreds of visits to the Park, he has encountered all of the obstacles detailed by his ADA compliance expert. (Id. at ¶ 13.) Those obstacles are set forth in the amended complaint as follows:

> a.  Due to the excessive slope of ramps used to enter and exit the Park (slopes measured and documented by plaintiff's expert ADA compliance witness [ ] and found to be in violation of the ADA), Plaintiff is taken by surprise by the sudden drop or increase in elevation as he cannot see the ramp.

> b.  Due to the missing curb cuts throughout the Park in violation of the ADA and documented by plaintiff's expert ADA compliance witness[ ], plaintiff is in danger o[f] tripping, falling, or slipping into the street because of sudden elevation changes.

> c.  Due to obstructed pathways in violation of the ADA and documented by Plaintiff's expert ADA compliance witness, plaintiff is in constant danger of serious injury while walking into, out of, or around the Park.

> d.  Due to the missing concrete along pedestrian pathways (as photographed and documented by plaintiff's expert), plaintiff is in imminent danger of falling or tripping without warning at any given time.

> e.  Due to the missing detectable warnings at crosswalks, plaintiff is unable to perceive that he is nearing a roadway with moving traffic. Accordingly, plaintiff is unable to cross any streets in the Park without the assistance of able-sited individuals, and has been forced to rely on the kindness of strangers to get across the streets on several occasions.

> f.  Due to handrails that do not extend far enough beyond the stairs to comply with the ADA, plaintiff is unable to gauge when he is nearing a stairwell, and faces imminent risk of falling.

(<u>Id.</u> at ¶¶ 20(a)-(f).) As a result of these obstacles, he has been unable to get around the Park without assistance. (<u>Id.</u> at ¶¶ 13, 14, 20(g).) The occurrences are continual and repeating. (<u>Id.</u> at ¶ 8.) During a visit on August 13, 2012, he also was struck by a bicyclist while attempting to walk on the pedestrian path of the Park's East Drive. (<u>Id.</u> at ¶ 15.) Bernstein alleges that the bike accident was the result of the City's failure to enforce bicycle traffic in compliance with the ADA. (<u>Id.</u> at ¶ 16.)

### D.    Bernstein's ADA Expert

Bernstein attached a report and declaration of ADA expert Gary Talbot to his amended complaint. (FAC at Ex. 1.) Talbot is the ADA Program Director for Amtrak. The report summarizes Talbot's observations and findings following a site inspection of Central Park on December 14, 2013. The report includes photographs and descriptions of different deficiencies in the Park, which were located at: one of the Park transverse roads, entrances to the Park, ramps and stairs used at the entrances to and inside the Park, and signalized street crossings and cross walks at the entrances to and inside the Park. FAC at Ex. 1. The specific location of these defects are not identified. For each set of photographs, Talbot described what was inaccessible about the area and how it violates the ADA: e.g., missing concrete in the sidewalk, no curb ramp from sidewalk to street, missing handrail, a pathway narrows to 29 inches whereas the ADA requires the path to be a minimum of 32 inches wide, or a pathway slope was 10.51% whereas the ADA's maximum allowable slope is 2%. The report does not cite to the ADA regulations that are allegedly violated.

Also attached to the complaint is a declaration from Talbot. (FAC at Ex. 2.) In relevant part, it states that "[o]n December 14, 2013, I personally conducted a site inspection of Central

Park, with the specific purpose of assessing whether several aspects of the Park were in compliance with the ADA." Talbot Decl. at ¶ 3. Talbot concludes that "[a]fter comparing my findings to accessibility standards set by the ADA, I determined that many facets of the Park violated the ADA . . . ." Id. at ¶ 5. Talbot does not state that Bernstein has encountered any of the obstacles he examined, or that he visited parts of the Park that Bernstein also visited.

## DISCUSSION

I.      **Motion to Dismiss Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Krys v. Pigott, 749 F.3d 117, 128 (2d Cir. 2014) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))); Fed. R. Civ. P. 8(a)(2) (A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alternation in original) (quoting Twombly, 550 U.S. at 557).

In its review, the Court must take "factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). The Court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing

6

suit." In re Elan Corp. Sec. Litig., 543 F. Supp. 2d 187, 206 (S.D.N.Y. 2008) (quoting Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)). The Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted).

Although standing and subject-matter jurisdiction both limit the jurisdiction of federal courts, they are separate questions: standing addresses whether a federal court may grant relief to a party in the plaintiff's position while subject-matter jurisdiction addresses whether a federal court may grant relief to any party given the claim asserted. See Rent Stabilization Ass'n v. Dinkins, 5 F.3d 591, 594 & n.2 (2d Cir. 1993); Vitanza v. Bd. of Trade of City of New York, 00 Civ. 7393 (RCC), 2002 WL 424699, at *5 & n.10 (S.D.N.Y. March 18, 2002). Dismissals for lack of standing, however, may be made pursuant to Rule 12(b)(6) for failure to state a claim, rather than Rule 12(b)(1) for lack of subject-matter jurisdiction. Rent Stabilization Ass'n, 5 F.3d at 594 & n.2; Chenkin v. 808 Columbus LLC, 570 F. Supp. 2d 510, 515 (S.D.N.Y. 2008) (citing same). Here, the City is not arguing that the Court lacks authority to grant the relief requested to any plaintiff, pursuant to subject-matter jurisdiction. Rather, the City is arguing that the Court cannot grant relief to Bernstein because he has failed to plead a necessary element of his claim. As a result, "the claims are more properly decided pursuant to Rule 12(b)(6)." Vitanza, 2002 WL 424699, at *5.

## II.    Title II of the ADA and Section 504 of the Rehabilitation Act

The ADA was enacted by Congress to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It "seeks to prevent not only intentional discrimination against people with

disabilities, but also – indeed, primarily – discrimination that results from 'thoughtlessness and indifference,' that is, from 'benign neglect.'" Brooklyn Ctr. for Independence of Disabled v. Bloomberg, 980 F. Supp. 2d 588, 640 (S.D.N.Y. 2013) (quoting Alexander v. Choate, 469 U.S. 287, 301 (1985)). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Noel v. N.Y.C. Taxi & Limousine Comm'n, 687 F.3d 63, 68 (2d Cir. 2012) (internal quotation marks omitted) (citing Innovative Health Sys., Inc. v. City of White Plains, 931 F. Supp. 222, 232 (S.D.N.Y. 1996)). Title I of the ADA prohibits employment discrimination. 42 U.S.C. § 12112. Title III prohibits discrimination by private entities in public accommodations, such as hotels, theaters, and train stations. 42 U.S.C. §§ 12181-82. Title II, at issue here, prohibits disability discrimination by public entities in connection with access to public services. 42 U.S.C. § 12132.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Persons with disabilities are "qualified" individuals when they, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet[ ] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The definition of "public entity" includes "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A), (B). Disability discrimination with respect to services, programs, or activities "encompasses virtually

8

everything that a public entity does." Brown v. Cnty. of Nassau, 736 F. Supp. 2d 602, 611 (E.D.N.Y. 2010) (citing Johnson v. City of Saline, 151 F.3d 564, 569 (6th Cir. 1998)). See 42 U.S.C. § 12101(a)(1)-(3) (Congress enacted the ADA to address society's tendency to discriminate against individuals with disabilities "in such critical areas as employment, housing, public accommodation, education, transportation, communication, recreation, institutionalization, health services, voting, and access to services").

To establish a *prima facie* violation of Title II of the ADA,

> a plaintiff must demonstrate that "(1) he is a qualified individual with a disability; (2) the defendant is subject to [the ADA]; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability."

Disabled in Action v. N.Y.C. Bd. of Elections, 752 F.3d 189, 196-97 (2d Cir. 2014) (holding that, under Title II of the ADA, the Board of Elections denied people with mobility and vision disabilities meaningful access to its voting programs) (quoting McElwee v. Cnty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012)). See also United Spinal Ass'n v. N.Y.C. Bd. of Elections, 882 F. Supp. 2d 615, 623 (S.D.N.Y. 2012) (holding same). The requirements for Section 504 of the Rehabilitation Act are virtually the same as those of the ADA, except that under the Rehabilitation Act, the offending entity must receive federal financial assistance. 29 U.S.C. § 794(a); Disabled in Action, 752 F.3d at 196; Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). As a result, claims under Title II of the ADA and Section 504 of the Rehabilitation Act are treated identically, and claims under both may be considered together. Disabled in Action, 652 F.3d at 196; Henrietta, 331 F.3d at 272; Andino v. Fischer, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010).

Title II and the Rehabilitation Act require only that entities make "reasonable accommodations" to enable "*meaningful access*" to services, programs, and activities. See Wright v. Giuliani, 230 F.3d 543, 548 (2d Cir. 2000). See also United Spinal Ass'n, 882 F. Supp. 2d at 624 (Under Title II, "the ADA does not . . . require perfection."). "Meaningful access," not "equal access," is the Title II standard.[4] N.Y.C. Civic Ass'n of the Deaf v. City of New York, 95 Civ. 8591 (RWS), 2011 WL 5995182, at *9-10 (S.D.N.Y. Aug. 15, 2011) (discussing why "meaningful access," and not "equal access," is the standard under Title II). See also Choate, 469 U.S. at 301 (holding that the ADA requires that people with disabilities "be provided with meaningful access"); Henrietta D., 331 F.3d at 275 (same); Wright, 230 F.3d at 548 (same); Disabled in Action, 752 F.3d at 198-99 (same).[5]

The meaningful access standard is "responsive to two powerful but countervailing considerations – the need to give effect to the statutory objectives and the desire to keep [the ADA and Rehabilitation Act] within manageable bounds." Choate, 469 U.S. at 299. "The 'meaningful access' standard [strikes] a balance between these two legitimate goals." N.Y.C. Civic Ass'n of the Deaf, 2011 WL 5995182, at *9 (citing Choate, 469 U.S. at 299-301).

---

[4] To the extent that 28 C.F.R. § 35.130(b)(1)(ii), the regulation cited by Bernstein, requires equal access, rather than meaningful access, it is not enforceable. See N.Y.C. Civic Ass'n of the Deaf, 2011 WL 5995182, at *9-10 (citing Alexander v. Sandoval, 532 U.S. 275 (2001)). See also Abrahams v. MTA Long Island Bus, 644 F.3d 110, 118 (2d Cir. 2011) (explaining that under Sandoval, a plaintiff must show that a "regulation applies – but does not expand – the statute"); Iverson, 452 F.3d at 100 (noting that "regulations that interdict a broader swath of conduct than the statute itself prohibits" cannot be enforced under Sandoval)).

[5] Although Bernstein quotes Brooklyn Ctr. for Independence of Disabled v. Bloomberg for the proposition that "equal" access is required, that case states the opposite: by "whatever means the City chooses, it must ensure that people with disabilities have meaingful access to the shelter system." 980 F. Supp. 2d at 646 (citing 28 C.F.R. § 35.150(a)(1) (providing that Section 35.150(a) does not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities")).

When interpreting the mandates of the ADA, courts look to the implementing regulations promulgated by the Department of Justice. See Henrietta D., 331 F.3d at 273. See also 42 U.S.C. § 12134(a). The regulations apply to any "facility," including in part "all or any portion of buildings, structures, sites . . . or . . . roads, walks, passageways, parking lots, or other real or personal property." 28 C.F.R. § 35.104. This includes public parks. See, e.g., Gaylor v. Georgia Dep't of Natural Res., et al., 2:11 Civ. 288 (RWS), 2013 WL 4790158 (N.D. Ga. Sept. 6, 2013) (applying Title II's protections to discrimination faced by a disabled individual seeking to access state parks and recreation facilities); Scharff v. Cnty. of Nassau, 10 Civ. 4208 (DRH)(AKT), 2014 WL 2454639, at *6 (E.D.N.Y. June 2, 2014) (holding that "the installation and maintenance of pedestrian crossing signals constitute a [ ] service, program or activity, and that pedestrian crossing signals, walkways and crossings constitute facilities").

In evaluating whether an existing public facility complies with the ADA, the facility must be evaluated "in its entirety."[6] 28 C.F.R. § 35.150(a). This means that a public entity does not need "to make each of its existing facilities accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1). See Pascuiti v. New York Yankees, 87 F. Supp. 2d 221, 223 (S.D.N.Y. 1999) (where plaintiffs brought suit under Title II against the New York City Department of Parks and Recreation and the New York Yankees claiming that Yankee Stadium was not accessible to individuals with disabilities, the City was "not required to make each portion of the Stadium readily accessible; the issue is whether the Stadium, *when viewed in its entirety*, is readily accessible") (emphasis added); United Spinal Ass'n, 882 F. Supp. 2d at 626.

---

[6] By contrast, new construction, defined as being built after Title II's January 26, 1992 effective date, must be "readily accessible to and usable by individuals with disabilities." 28 C.F.R. §§ 35.151(a)(1). New alterations to existing facilities (i.e., alterations commenced after January 26, 1992) must be altered "to the maximum extent feasible" to render the facility "readily accessible to and usable by individuals with disabilities." 28 C.F.R. §§ 35.151(b)(1). See Tennessee v. Lane, 541 U.S. 509, 532 (2004).

Rather, the regulations require that a public service, program or activity must be "readily accessible" when "viewed in its entirety." 28 C.F.R. § 35.150(a).

These dual requirements – *readily accessible* when *viewed in its entirety* – are known as the "program access" requirement of Title II. See Pascuiti, 87 F. Supp. 2d at 223-24 (citing 28 C.F.R. Pt. 35, app'x A, at 492 ("Preamble to Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services")). "Title II's emphasis on 'program accessibility' rather than 'facilities accessibility' was intended to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to choose how best to make access available." Brown, 736 F. Supp. 2d at 612 (quoting Parker v. Universidad de P.R., 225 F.3d 1, 6 (1st Cir. 2000)).

Courts may consider individual barriers as building blocks to show that a public entity is not readily accessible when viewed in its entirety. Pascuiti, 87 F. Supp. 2d at 224 ("While proving that particular barriers exist might not be sufficient to establish Title II liability, each barrier is a building block for a finding that the [public entity], viewed in its entirety, is not readily accessible."); Brown, 736 F. Supp. 2d at 616 ("[I]ndividual barriers to access, while not themselves violations under this standard, can cumulatively result in a facility being not readily accessible."). See also Disabled in Action, 752 F.3d at 198-99 (holding that plaintiffs need not "prove that they have been disenfranchised or otherwise completely prevented from enjoying a service, program, or activity to establish discrimination" but need only show that the defendant has failed to provide them with meaningful access to the benefit that it offers) (internal quotations and citations omitted).

**III.      Standing**

Standing is an "irreducible constitutional minimum." Lujan v. Defenders of Wildlife, 504

U.S. 555, 560 (1992). To establish standing, a plaintiff must generally demonstrate: (1) an

"injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and

(3) that it is "likely," rather than "speculative," that the injury "will be redressed by a favorable

decision." Id. at 560-61 (internal quotation marks and citation omitted). See also Kreisler, 731

F.3d at 187. A plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the

injury requirement but also must show a likelihood of future harm. McCormick ex rel.

McCormick v. Sch. Dist. of Mamaroneck, 370 F.3d 275, 284 (2d Cir. 2004).

To establish standing under the ADA, the plaintiff must (1) allege past injury under the

ADA, (2) show that it is reasonable to infer from the complaint that the discriminatory treatment

will continue, and (3) show that it is reasonable to infer that the plaintiff intends to return to the

violating entity in the future. Kreisler, 731 F.3d at 187-88 (citing Camarillo v. Carrols Corp., 518

F.3d 153, 158 (2d Cir. 2008) (per curiam)). Although "[t]he vast majority of cases in which

injunctive relief is sought under the ADA arise under Title III," there does not appear to be "any

precedent holding that the standard for determining standing is different between [Title II and

Title III claims]." Williams v. City of New York, 12 Civ. 6805 (VEC), 2014 WL 3639153, at *3

(S.D.N.Y. July 22, 2014).

In the ADA context, standing "often turns on the nature and source of the claim

asserted." Baker v. N.Y. State Dep't of Envtl. Conservation et al., 10 Civ. 1016 (GLS)(RFT),

2012 WL 2374699, at *3 (N.D.N.Y. June 22, 2012) (citing Chapman v. Pier 1 Imports (U.S.)

Inc., 631 F.3d 939, 946 (9th Cir. 2011) (en banc)). A "broad view of constitutional standing" is

appropriate under the ADA because "private enforcement suits are the primary method of obtaining compliance with the Act." Baker, 2012 WL 2374699, at *2 (quoting Chapman, 631 F.3d at 946). Although the ADA is to be interpreted broadly, however, "the scope of Title II is not limitless." Noel, 687 F.3d at 68 (citing Reeves v. Queen City Transp., Inc., 10 F. Supp. 2d 1181, 1185 (D. Col. 1998)). "Ensuring that standing requirements are met by each plaintiff in each lawsuit brought under the ADA enables courts to ensure that the ADA is not being abused . . . ." Shariff v. Beach 90th St. Realty Corp., 11 Civ. 2551 (ENV)(LB), 2013 WL 6835157, at *2 (E.D.N.Y. Dec. 20, 2013) (quoting Access 4 All Inc. v. Thirty E. 30th St., LLC, 04 Civ. 3683 (KMW)(DF), 2006 U.S. Dist. LEXIS 96742, at *35-36 (S.D.N.Y. Dec. 11, 2006)).

## IV.  Analysis

The defendants do not dispute that Bernstein is a qualified individual under the ADA, that the City is a public entity subject to Title II of the ADA, or that the City receives federal financial assistance, making it subject to the Rehabilitation Act.[7] Were this case to go forward, the only issue is whether Bernstein has suffered discrimination, due to his disability, on the basis of having been denied meaningful access to the Park.

In the City's motion to dismiss, it argues that Bernstein's suit should be dismissed because (1) Bernstein lacks Article III standing because he has failed to demonstrate that he has personally suffered an injury in fact, and (2) Bernstein fails to state a claim upon which relief can be granted because he has not demonstrated that, when viewed in its entirety, the Park is not readily accessible. Bernstein claims that his pleadings sufficiently demonstrate both standing and

---

[7] The New York City Department of Transportation is also a named defendant. New York City agencies are not suable entities. See N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). Accordingly, DOT should be dismissed for this independent reason.

a claim upon which relief can be granted. Both parties also disagree on the relevant standards under which Bernstein's allegations should be judged.

Notwithstanding the broad language and remedial purposes of the ADA, and the deference due to non-moving parties at the motion to dismiss stage of the pleadings, Bernstein has failed to meet the standing requirements of Article III. His pleadings fail to create an adequate factual basis from which it is reasonable to infer that he suffered an injury in fact and that he intends to return to the Park.

### A.     Concrete and Particularized Past Injury

Under the standing analysis's first prong, a plaintiff must allege a past "injury in fact" that is "concrete and particularized." Lujan, 504 U.S. at 560. "Particularized" means "that the injury must affect the plaintiff in a personal and individual way." Id. at 560 n.1. See also Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) ("The complainant must allege an injury to himself that is distinct and palpable [ ] as opposed to merely abstract. . . .") (internal citations omitted). Under the ADA, deterrence may constitute an injury. See Kreisler, 731 F.3d at 188 Once a plaintiff has established standing to sue for at least one barrier under the ADA, he has standing to challenge a list of alleged barriers regardless of whether he has personally encountered them. Id.

Bernstein alleges that he was struck by a bicyclist while attempting to walk on a Park pedestrian path on August 13, 2012. (FAC ¶ 15.) He claims that this "incident was a direct and proximate result of the City's failure to bring the Park in[to] compliance with [the] ADA." (Id. at ¶ 16.) Bernstein does not provide any more factual detail or identify any Title II regulations to support this claim.

15

This isolated incident by a single actor independent of the City does not demonstrate that the City failed to adopt policies or procedures in violation of the ADA. The ADA is not meant to "regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities." Camarillo, 518 F.3d at 157 (internal quotation marks and citation omitted) (stating that the plaintiff must allege "more than mere rudeness or insensitivity, and more than one or two isolated mistakes"). Nor is it meant to prevent bicyclists from violating traffic rules. See also Kelly v. Rice, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005) (traffic violations are "a matter of local and state concern and did not implicate the ADA"). Thus, the allegations related to this incident fail to allege a particularized injury under the ADA.[8]

Aside from the bike incident, Bernstein alleges that he "has encountered all of the obstacles" listed in the "Preliminary ADA Assessment at New York Central Park," prepared by his "expert ADA compliance witness, Gary Talbot," and attached as Exhibit 1 to the amended complaint. (FAC ¶ 13.) Bernstein does not allege when or where he encountered these obstacles, or provide any factual details. And Talbot does not state in his declaration that he examined these particular obstacles because Bernstein encountered them during a visit.

The obstacles are identified in paragraph 20 of the amended complaint. The complaint alleges various deficiencies in the Park – e.g., excessive slope of ramps, missing curb cuts, obstructed pathways, missing concrete on pathways, and missing detectable warnings at crosswalks. (Id. at ¶ 20.) The complaint further alleges that plaintiff suffers, in the present tense, as a result of these obstacles – e.g., "plaintiff is taken by surprise," "plaintiff is in danger," "plaintiff is unable to gauge." (Id.) The complaint does not identify where these violations

---

[8] For the same reason, allegations concerning this incident fail to state a claim under the ADA.

occurred, whether Bernstein was injured by them, or identify the relevant regulations that are violated.

In Chapman v. Pier 1 Imports (U.S.), Inc. 631 F.3d 939 (2011) (*en banc*), the Court of Appeals for the Ninth Circuit faced an ADA plaintiff who alleged injuries based, in part, on an "Accessibility Survey" that was attached the plaintiff's complaint. Chapman is "persuasive," Kreisler, 731 F.3d at 188, and analogous to the facts here. In Chapman, the plaintiff used a motorized wheelchair and sued a Pier 1 Imports store (the "Store") alleging that some of the Store's architectural features denied him "full and equal enjoyment" under Title III of the ADA.[9] 631 F.3d at 943. In his complaint, the plaintiff provided a list of barriers, only some of which he had personally encountered, and attached an Accessibility Survey that listed purported ADA violations at the Store. Id. at 943 & n.1. The court of appeals held that the complaint should have been dismissed at the pleading stage because Chapman lacked standing to assert the ADA claims because he had not demonstrated a particularized injury in fact, i.e., that he *personally* suffered discrimination under the ADA on account of his disability. Chapman's Accessibility Survey identified alleged ADA violations "without connecting the alleged violations to Chapman's disability, or indicating whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment of the Store." Id. at 954. As the court of appeals explained, the list of violations "cannot substitute for the factual allegations required to satisfy Article III's requirement of an injury-in-fact." Id. at 955. As a result, the plaintiff left "the federal court to

---

[9] Unlike Title II's "meaningful access" requirement, Title III requires "full and equal" access. Compare N.Y.C. Civic Ass'n of the Deaf, 2011 WL 5995182, at *9-10 (discussing why "meaningful access" is the standard under Title II, not "full and equal" access) with Stephens v. Shuttle Assoc., L.L.C., 547 F. Supp. 2d 269, 276 (S.D.N.Y. 2008) (using the "full and equal" access standard under Title III) (citing 42 U.S.C. § 12182(a)).

guess which, if any, of the alleged violations deprived him of the same" access that a person who is not wheelchair bound would enjoy. Id. at 955.

Like Chapman's complaint, Bernstein's alleged harm is neither "concrete" nor "particularized." Lujan, 504 U.S. at 560. By relying on his expert's report rather than pleading factual content, Bernstein has prevented the Court from drawing a reasonable inference that he personally encountered any of the barriers in such a way as to impair *his* access to the Park. Such abstract and conclusory allegations – unsupported by factual details or specifics – do not support of finding that Bernstein has been injured by these obstacles. Although he states in his amended complaint that he "has encountered all of the obstacles listed" by his compliance expert, this bald assertion is insufficient to satisfy the particularized injury requirement of Article III. He does not identify how any of these alleged violations threatened to deprive him of "meaningful access" to the Park or how they deter him from visiting the Park in the future. Indeed, viewing the Park in its entirety, Bernstein has not established that he is denied ready accessibility. See also Chapman, 631 F.3d at 957 (J. Smith, concurring) ("An encounter with an [ADA Accessibility Guidelines] defined barrier that a disabled person does not notice (or that does not affect the individual) is not a 'distinct and palpable' injury.") (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)).

Finally, Bernstein could have established an injury by alleging that he is deterred from returning to the Park because of the accessibility barriers. Kreisler, 731 F.3d at 188. Bernstein, however, makes no such allegation. Rather, he pleads that he is a Michigan resident who comes to New York "approximately 30 times per year, for over 10 years," and that he has been to the Park "hundreds" of times. (FAC ¶¶ 12, 13.) Nothing in the complaint allows the Court to reasonably infer that Bernstein has been deterred from visiting the Park.

Bernstein has failed to establish the injury in fact prong of standing by alleging either injury caused to him personally by an actual ADA violation, or that the Park's noncompliance has deterred him from visiting the Park.

### B.     Likelihood of Future Harm

Bernstein's complaint also fails to establish the third standing prong: likelihood of future harm. In the ADA context, a plaintiff must plead an intent to return to, or access the services of, the offending entity, or a deterrence from returning to, or accessing the services of, that entity. See Disabled in Action of Metro, N.Y. v. Trump Int'l Hotel & Tower, 01 Civ. 5518 (MBM), 2003 WL 1751785, at *7 (S.D.N.Y. Apr. 2, 2003) (holding that plaintiffs must show they have "a plausible intention or desire to return to the place but for the barriers to access"). Bernstein has not alleged that he intends to return to the Park.

No "standard has been established for the necessary degree of 'likelihood' that an ADA plaintiff will return, nor a specific number of times per year that plaintiff will visit the facility, nor even how far forward in time should be considered in determining whether the injury might be 'imminent.'" Access 4 All, Inc. v. G & T Consulting Co., LLC, 06 Civ. 13736 (DF), 2008 WL 851918, at *8 (S.D.N.Y. March 28, 2008) (citation omitted). Courts have considered, however, the following factors to be relevant: (1) the proximity of the entity to the plaintiff's residence, (2) the plaintiff's past use of the entity, (3) the definitiveness of the plaintiff's plans to return to the entity, and (4) the plaintiff's frequency of travel near the defendant. Id. See, e.g., Camarillo, 518 F.3d at 158 (holding that, under Title III, the plaintiff had standing, "at least at this stage in the litigation," because, in part, it was "reasonable to infer, based on the past frequency of her visits and the proximity of defendants' restaurants to her home, that Camarillo intends to return to these restaurants in the future"); Brown, 736 F. Supp. 2d at 608-09 (noting

19

that, under Title II, the plaintiff declared in an affidavit that he visited the Nassau Coliseum in 2002, has been back three to six times since then, described the various barriers he encountered on those occasions and the injuries he suffered as a result of them, and he pled that he intends to return to the Nassau Coliseum in the future, "particularly when the Rangers play the Islanders"). See also Hirsch v. Hui Zhen Huang, 10 Civ. 9497 (LTS), 2011 WL 6129939, at *3 (S.D.N.Y. Dec. 9, 2011) (holding that, under Title III, plaintiff's allegation that he visited the restaurant in the past, lives ten miles from it, and has a conditional desire to return to the restaurant, but for the defendant's alleged misconduct, is sufficient to demonstrate a plausible intent to return for standing).

In cases where the complaint fails to demonstrate an intent to return, or the deterrence from doing so, courts have still found plausible intent based on supplemental documentation provided by the plaintiff. For instance, in Harty v. Simon Property Group, L.P., a Title III ADA case, the plaintiff alleged in his complaint that he planned to return to the mall at issue, and later submitted an affidavit with the opposition to the motion to dismiss providing more context and support for his intentions. 428 F. App'x 69, 71 (2d Cir. 2011). In the affidavit, he stated that he "teach[es] courses in weapons handling and safety" for which he "travel[s] nationwide and visit[s] gun shows throughout the country," and provided a list of upcoming gun shows in New York and stated that he "would like to shop" at the mall when he attends those shows. Id. at 71 (alterations in original). The statements were "sufficient to support a plausible inference at the pleading stage" that the plaintiff intended to return to the entity, even though the complaint alone did not. Id. Similarly, in Green v. DGG Properties Co., Inc., another Title III ADA case, the plaintiff's affidavit, submitted with his opposition to the motion to dismiss, stated that he frequently visited the state where the offending entity is located due to his role as his law firm's

20

nationwide practice group coordinator, his having tried cases there in the past, his frequent engagement in business development, client activities, and social occasions in the state, all of which he expects to continue in the future. 3:11 Civ. 1989 (VLB), 2013 WL 395484, at *12 (D. Conn. Jan. 31, 2013). His declaration allowed the court reasonably to infer that he intended to return, even where the complaint was insufficient. Id.

In contrast, Bernstein is silent as to his intention to return to the Park. See Lyons, 461 U.S. at 111 (holding that the plaintiff lacked standing due to "the speculative nature of Lyons' claim of future injury"). Nor did he provide a declaration or other documentation in opposition to this motion alleging a desire or plan to return to the Park. Moreover, he fails to provide a professional, personal, or other reason to suggest that he is likely to visit New York and the Park in the near future. The Court declines to infer an intent to visit the Park based solely on Bernstein's facially implausible allegation that he travels to New York from his home in Michigan approximately once every twelve days and has for the last ten years.[10]

Bernstein's bare assertions more closely resemble those in Harty v. Greenwich Hospitality Group, LLC, in which the Court of Appeals affirmed the dismissal of plaintiff's ADA complaint against a hotel in Stamford, Connecticut on standing grounds. 536 F. App'x 154, 155 (2d Cir. 2013). Harty, a Florida resident, claimed he often visited his family in Nyack, New York, a short distance from Stamford, but did not allege "any concrete plan to stay overnight in Stamford in the future." Id. "Despite dozens of trips to Nyack over the last thirty years, however, Harty specifie[d] only a single occasion on which he stayed overnight in Stamford – namely the occasion giving rise to his complaint." Id. "Further, Harty's assertion that he 'constantly travel[s]

---

[10] Bernstein provides no dates on which any of these trips took place other than the date when he was hit by a bicycle in the Park. And he provides no explanation or context that make such frequent travel plausible.

21

nationwide and visit[s] gun shows throughout the country,'" and that he visits public accommodations as an ADA tester "lacks the specificity necessary" to establish he has a present intention to travel to Stamford for an overnight visit. Id. (alteration in original). Bernstein's allegations, too, lack the specificity necessary for the Court to infer that he actually plans to return to the Park.

Finally, the Court recommends declining to grant Bernstein leave to amend his complaint a second time to cure this deficiency. Bernstein was on notice that he needed to plead that he had personally encountered barriers denying him meaningful access to the Park. First, in its December 30, 2013 Order, the Court repeated the City's contentions as to why the original complaint was deficient and cautioned Bernstein that he had to "adequately plead how he was personally affected by any alleged barriers to access." ECF No. 36. Then, in the City's March 11, 2014 opposition to the plaintiff's motion to amend the complaint, the City stated that the proposed amended complaint "does not contain sufficient factual content to support that plaintiff personally encountered a barrier(s) in Central Park that denied him 'meaningful access' on account of his disability when access to the Park is 'viewed in its entirety' . . . . as no details are provided as to [the] date on which plaintiff encountered the alleged barriers." ECF No. 46 at 9-10. Finally, in its June 24, 2014 Order, the Court again instructed, "[h]aving been made aware as to potential defects in his proposed amendments, Bernstein shall file an amended complaint by July 8, 2014. Bernstein is advised that he should make every effort to address any reasonable pleading defects identified by the defendants in their motion. The Court will not grant Bernstein

an opportunity to amend the complaint again should the defendants file a motion to dismiss." ECF No. 48.[11]

While mindful of the remedial purpose of the ADA and the low threshold that a plaintiff needs to meet at the motion to dismiss stage of the pleadings, the Court "must put aside the naural urge to proceed directly to the merits of this important dispute . . . . Instead, [the Court] must carefully inquire as to whether appellees have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable." Raines v. Byrd, 521 U.S. 811, 820 (1997). The Court finds that Bernstein has failed to plead sufficient facts to allow the Court to draw a reasonable inference that he suffered an injury in fact and will likely suffer future harm.

## CONCLUSION

Because I find that Bernstein lacks standing, I recommend that the City's motion to dismiss be GRANTED.

* * *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service

---

[11] Moreover, the amended complaint suggests that Bernstein attempted to comply with the Article III standing requirements. He pleads "Plaintiff has standing to bring the present cause of action: (a) Plaintiff is physically disabled according to the definition provided by the ADA, as he is 'substantially impaired in the major life activity of seeing.' (b) Plaintiff is being denied proper access to Central Park." (FAC ¶ 9.)

is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge McMahon. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:       New York, New York
             January 7, 2015